**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>                      Plaintiff,<br>v.<br><br>SHOP1103414053 STORE, et al.,<br><br>                      Defendants. | Case No. 24-cv-12014<br><br>**Judge Manish S. Shah**<br><br>**Magistrate Judge Jeffrey Cole** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT**

Microsoft Corporation ("Microsoft" or "Plaintiff") submits this Memorandum of law in support of its Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the defendants identified on the Amended Schedule A attached hereto as Exhibit 1[1] (the "Defaulting Defendants") based on Microsoft's action for trademark infringement, counterfeiting, and false designation of origin.

---

[1] "Defaulting Defendants" includes all Defendants listed on the Amended Schedule A, attached as Exhibit 1, that have not been noted as "DISMISSED." The Amended Schedule A is also attached to Plaintiff's proposed Final Judgment Order.

i

**STATEMENT OF FACTS**

Plaintiff, Microsoft Corporation, is an American multinational corporation and technology company having its principal place of business in Redmond, Washington and the owner of the trademarks asserted in this action. Compl. ¶ 4, ECF No. 1. Founded by Bill Gates and Paul Allen in 1975, Microsoft has become one of the largest and most influential companies in the world. *Id.* Initially known for its operating system, MS-DOS and later Windows, Microsoft has diversified its offerings to include a wide range of software, hardware, and services. *Id.* In 2001, Microsoft entered the video game industry with the launch of the original Xbox console. *Id.* ¶ 5. As a result of years of innovations, acquisitions, improvements, and expansions, Microsoft is now a major player in the video game industry. *Id.* In addition to creating hardware, Microsoft has expanded its gaming portfolio through the acquisitions of numerous game development studios. *Id.* In 2014, Microsoft acquired Mojang, the celebrated Stockholm-based game developer, and its iconic *Minecraft* video game and the associated trademarks. *Id.*

Available on every modern gaming platform, *Minecraft* is one of the most popular video games in history, with more than 300 million copies sold worldwide since its launch in 2009. *Id.* ¶ 6. In *Minecraft*, players explore a blocky, pixelated, procedurally generated, three-dimensional world with virtually infinite terrain. *Id.* Throughout the game, players generate new worlds by using procedural generation algorithms to create diverse landscapes, biomes, and terrain features. *Id. Minecraft* is one of the top-selling games of all time, one of the most popular online games on Xbox, and the top paid app for iOS in the US. *Id.* ¶ 7. The *Minecraft* community is among the most active and passionate, with *Minecraft* regularly having over 100 million monthly active players worldwide. *Id. Minecraft* has also won numerous awards since its release, including: (1) the 2020, 2022, and 2023 Kid's Choice Award for Favorite Videogame; (2) several BAFTA Children's

1

Awards from 2014 to 2016; and (3) the 2011 Spike Video Game Award for Best Independent Game. *Id*.

As a result, there is also an extremely high demand among *Minecraft* fans for Minecraft-themed or branded goods, and Microsoft and/or its licensees have, therefore, for years, used the MINECRAFT trademark, and other trademarks related to its Minecraft franchise (collectively, the "Minecraft Trademarks"), to sell assorted products. *Id.* ¶ 8. Microsoft and/or its licensees market and sell a variety of Minecraft branded products, including apparel, such as hoodies, headwear, t-shirts, and shorts; games and playthings, including plush dolls, toy building blocks, role-playing toys, and toy figures; accessories like jewelry, stickers, phone cases, and bags; and a wide array of other merchandise bearing the Minecraft Trademarks (collectively, "Authentic Minecraft Products"). *Id.* ¶ 8. Authentic Minecraft Products have become enormously popular and even iconic, driven by Microsoft's quality standards and innovative designs. *Id.* ¶ 9. Among the purchasing public, Authentic Minecraft Products are instantly recognizable as such. *Id.* Authentic Minecraft Products are distributed and sold to consumers through retailers throughout the United States, including authorized retailers in Illinois, such as Walmart and Target, and through websites like shop.minecraft.net. *Id.*

As a result of this long-standing use, strong common law trademark rights have amassed in the Minecraft Trademarks. *Id.* ¶ 10. Microsoft's use of the marks has also built substantial goodwill in the Minecraft Trademarks. *Id.* The Minecraft Trademarks are famous marks and are extremely valuable assets for Microsoft. *Id.* Additional factual assertions regarding Microsoft in Paragraphs 4-16 of the Complaint are incorporated herein. *Id.* ¶¶ 4–16.

On information and belief, Defaulting Defendants are unknown individuals and business entities who, either individually or jointly, own and/or operate one or more of the e-commerce

stores under the Seller Aliases identified in the Amended Schedule A and/or other seller aliases not yet known to Microsoft. *Id.* ¶ 17. On information and belief, Defaulting Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offering shipping to the United States, including Illinois, accepting payment in U.S. dollars, and selling and shipping products using infringing and counterfeit versions of the Minecraft Trademarks (collectively, the "Unauthorized Products") to residents in Illinois. *Id.* ¶ 22. Additional factual assertions regarding Defaulting Defendants in Paragraphs 17-31 of the Complaint are incorporated herein. *Id.* ¶¶ 17–31.

Microsoft filed its Complaint on November 21, 2024. ECF No. 1. On November 25, 2024, this Court granted Microsoft's *Ex Parte* Motion for Entry of a Temporary Restraining Order (the "TRO")[2] and extended the TRO on December 3, 2024. Order, ECF No. 25. The TRO was converted into a Preliminary Injunction on December 19, 2024. Prelim. Inj., ECF No. 35. Paragraph 7 of the TRO permitted Microsoft to complete service of process to Defendants by electronically publishing a link to the Complaint, the TRO, summons, and other relevant documents on a website and by sending an email to the email addresses identified in Exhibit 2 to the Declaration of Paul Varley and any email addresses provided for Defendants by third parties that includes a link to said website. TRO ¶ 7. The Defendants were served on December 16, 2024. ECF No. 29. The deadline for Defaulting Defendants to file an Answer was January 6, 2025. The Defaulting Defendants have not filed an answer or otherwise pled in this action. *See* Declaration of Martin F. Trainor ("Trainor Declaration") at ¶ 2.

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Microsoft therefore moves this Court for an Order entering default and default judgment, finding that Defaulting Defendants

---

[2] TRO, ECF No. 20.

are liable on all counts of Microsoft's Complaint. Fed. R. Civ. P. 55 (a) and (b)(2). Microsoft seeks an award of statutory damages against each of the Defaulting Defendants as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting. Microsoft also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Unauthorized Products or using the Minecraft Trademarks without authorization, and an Order that all assets in Defaulting Defendants' financial accounts, as well as any newly discovered assets, be transferred to Microsoft, as necessary to satisfy the statutory damages awarded by the Court.

## I. JURISDICTION AND VENUE ARE PROPER IN THIS COURT

This Court has original subject matter jurisdiction over Microsoft's claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defaulting Defendants because each Defaulting Defendant directly targets business activities toward consumers in Illinois and causes harm to Microsoft's business within this Judicial District. *See* Compl. ¶¶ 2, 22, 30-31; *uBID, Inc. v. GoDaddy Grp.*, 623 F.3d 421, 423-24 (7th Cir. 2010) ("without the benefit of an evidentiary hearing, the plaintiff bears only the burden of making a prima facie case for personal jurisdiction. [The Court] take[s] the plaintiff's asserted facts as true and resolve[s] any factual disputes in its favor.").

Defaulting Defendants have targeted sales to Illinois residents by setting up and operating e- commerce stores that offer shipping to the United States, including Illinois, and, on information and belief, have sold and shipped Unauthorized Products to residents of Illinois. Compl. ¶ 2. As such, personal jurisdiction is proper since each of the Defaulting Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Microsoft substantial injury in Illinois. *Id. See, e.g., NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th

Cir. 2022) (concluding that personal jurisdiction is proper when a defendant purposefully directs its actions to Illinois via third-party online retailers).

## II. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On November 21, 2024, Microsoft filed its Complaint alleging federal trademark infringement and counterfeiting, 15 U.S.C. § 1114 (Count I) and false designation of origin, 15 U.S.C. § 1125(a) (Count II). Compl. ¶¶ 32-44. The Defendants were properly served with the Complaint on December 16, 2024. ECF No. 29. Despite having been served with process, none of the Defaulting Defendants have, to date, filed an answer or otherwise pled in this action. Trainor Declaration ¶ 2. Upon information and belief, none of the Defaulting Defendants are active-duty members of the U.S. armed forces. *Id.* ¶ 3. Accordingly, Microsoft asks for entry of default against the Defaulting Defendants.

## III. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55(b)(2) provides for court-ordered default judgments. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *U.S. v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Breuer Elec. Mfg. v. Toronado Sys. of Am.*, 687 F.2d 182, 186 (7th Cir. 1982)). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *See Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994) (citing

5

*Thomson v. Wooster*, 114 U.S. 104 (1885)).

Microsoft served Defendants on December 16, 2024. ECF No. 29. The answer deadline, January 6, 2025, has long passed, and no answer or other responsive pleading has been filed by any of the Defaulting Defendants. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate and consistent with previous analogous cases before this Court. Microsoft therefore requests an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against each of the Defaulting Defendants for using counterfeit versions of the Minecraft Trademarks on products sold or offered for sale through the e-commerce stores operating under the Seller Aliases.

Microsoft also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Unauthorized Products or using the Minecraft Trademarks without authorization, and an Order that all assets in Defaulting Defendants' financial accounts, as well as any newly discovered assets, be transferred to Microsoft, as necessary to satisfy the statutory damages awarded by the Court.

a. **Trademark Infringement and Counterfeiting, and False Designation of Origin, Claims**

To properly plead a claim of trademark infringement and counterfeiting pursuant to the Lanham Act, a plaintiff must allege that (1) its mark is distinctive enough to be worthy of protection; and (2) defendant's use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products. *See Neopost Industrie B.V. v. PFE Int'l Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citing *Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 496–97 (7th Cir. 2001). It is well-settled that the standards for false designation of origin claims under Section 43(a) of the Lanham Act (15 U.S.C § 1125) are the same as for trademark infringement claims under Section 32 (15 U.S.C. § 1114). *See id.* at 684–85 (citing *Two Pesos, Inc. v. Taco*

*Cabana, Inc.*, 505 U.S. 763 (1992) (internal citations omitted)).

Microsoft alleged that it is the owner of the federally registered Minecraft Trademarks and that Defaulting Defendants have sold, offered to sell, marketed, distributed, and advertised products using infringing and counterfeit reproductions of the Minecraft Trademarks; that Defaulting Defendants have knowledge of Microsoft's rights in the Minecraft Trademarks; that Defaulting Defendants are not authorized to use the Minecraft Trademarks for any reason; and that Defaulting Defendants' use of the Minecraft Trademarks has caused, and is likely to continue to cause, consumer confusion. Compl. ¶¶ 4, 23, 34, 36.

Microsoft also alleged in its Complaint that Defaulting Defendants have used the Minecraft Trademarks in connection with the sale of Unauthorized Products. *Id.* ¶¶ 41-43. As such, this creates a false designation of origin and a misleading representation of fact as to the origin and sponsorship of Defaulting Defendants' Unauthorized Products. *Id.*

Since the Defaulting Defendants have failed to answer or otherwise plead in this matter, the Court must accept the allegations contained in Microsoft's Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Microsoft requests entry of judgment with respect to Counts I and II for willful trademark infringement and counterfeiting of the Minecraft Trademarks and false designation of origin.

## IV. PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per

7

counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

Because Microsoft lacks knowledge regarding the full scope of Defaulting Defendants' sales and profits, statutory damages are particularly appropriate for default cases like this. *See Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.*, 03 C 4986, 2004 WL 2534378 at *6 (N.D. Ill. Nov. 8, 2004) (citing *Louis Vuitton Malletier v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002) (citing S. Rep. No. 177, 104th Cong. (1995))). Likewise, Courts have recognized that statutory damages may be awarded without requiring an evidentiary hearing. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 03 C 5311, 03 C 4844, 2008 WL 1775512, at *3 (N.D. Ill. Apr. 17, 2008) (internal citations omitted).

### a. Statutory Damages are Warranted in this Case

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damages provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.*, 2004 WL 2534378 at *4 (citing *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999) ("Cases decided under the Copyright Act, which deals with a similar problem and a similar legislative grant to discretion, afford guidance here").

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages "enjoy[s] wide discretion" and "may consider various factors such as 'the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as

a deterrent to future copyright infringement.'" *Id.* (internal citations omitted). Courts in this district have also considered "the significant value of [a plaintiff's] brand and the efforts taken to protect, promote and enhance that brand" in determining "the appropriate dollar figure for the award" in a trademark infringement and counterfeiting case. *Lorillard Tobacco Co.*, 2004 WL 2534378 at *6. Courts have also awarded significant damages amounts where a defendant's counterfeiting activities were conducted through Internet traffic or advertisement because online sales enable a defendant to reach a "vast customer base". *Luxottica USA LLC v. The P'Ships*, 14 c 9061, 2015 WL 3818622, at *3 (N.D. Ill. June 18, 2015) (quoting *Burberry Ltd. & Burberry USA v. Designers Imports., Inc.*, No. 07 Civ. 3997 (PAC), 2010 WL 199906, at *10 (S.D.N.Y. Jan. 19, 2010).

In similar cases involving willful Internet-based counterfeiting, courts have awarded statutory damages to the plaintiff in order to: (1) deter the defendants and others like them from bringing counterfeit goods into commerce, (2) compensate the plaintiff for damages caused by defendants' infringement, and (3) punish the defendants appropriately for their counterfeiting activities. *See, e.g., Luke Combs v. The P'Ships*, No. 21-cv-02007 (ECF No. 40) (N.D. Ill. June 15, 2021) (awarding $100,000 in statutory damages per defendant); *Volkswagen Group of Am., Inc. v. CAR FAN*, No. 22-cv-00863 (N.D. Ill. May 27, 2022) (awarding $500,000 in statutory damages per defaulting defendant); *Advance Mag. Publishers Inc. v. Prettty Shopping Store*, No. 22-cv-00854 (N.D. Ill. May 24, 2022) (awarding $500,000 in statutory damages per defaulting defendant). Given the Court's discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), Microsoft respectfully requests the Court's entry of an award of fifty thousand dollars ($50,000) per Defaulting Defendant.

### i. A High Statutory Damages Award is Needed to Deter Defaulting Defendants' Willful Counterfeiting

Defaulting Defendants' counterfeiting was willful and therefore warrants the requested

statutory damages award. "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co.,* 2004 WL 2534378 at *7 (quoting *Microsoft Corp. v. Logical Choice Computers, Inc.*, No. 99 C 1300, 2001 WL 58950, at *11 (N.D. Ill. Jan. 22, 2001) (internal citations omitted)). "Knowledge need not be prove[n] directly, but can be inferred from a defendant's conduct." *Id.* As alleged in Microsoft's Complaint, Defaulting Defendants facilitated sales by designing the e-commerce stores so that they appeared to unknowing consumers to be authorized online retailers, outlet stores, wholesalers, or simply resellers of authorized goods. Compl. ¶ 23. This demonstrates that the Defaulting Defendants clearly had knowledge that their activities constituted infringement or that they at least demonstrated a reckless disregard for Microsoft's rights in the Minecraft Trademarks. *Id.* ¶ 36; *see also* ECF No. 18. Courts in this district have also deemed counterfeiting willful when defendants default. *See Deckers Outdoor Corp. v. Does 1-55*, 11 C 10, 2011 WL 4929036 at *5 (N.D. Ill., Oct. 14, 2011) (citing *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y 2003) (other internal citations omitted).

Further, in determining an appropriate statutory damage award, this Court should look to the *Lorillard* case and consider "the significant value of [the brand] and the efforts taken to protect, promote and enhance that brand." *Lorillard Tobacco Co.*, 2004 WL 2534378 at *6. Microsoft and/or its authorized licensees have expended substantial time, money, and other resources advertising, promoting, and marketing Authentic Minecraft Products. Compl. ¶ 16. Thus, the requested statutory damages award is reasonable in view of the value of the Minecraft brand and the extensive steps being taken by Microsoft to protect, promote, and enhance it. *See Luxottica USA LLC*, 2015 WL 3818622 at *2-3.

This Court should also consider that the Defaulting Defendants operate online and attract wide market exposure through Internet traffic and/or advertisement. They also operate anonymously, which further justifies an award of the requested statutory damages award. *See Luke Combs*, No. 21-cv-02007 (N.D. Ill. June 15, 2021) (ECF No. 39) ("After considering … the need to deter infringement that is easily committed and difficult to stop, the court concludes that $100,000 is an appropriate award").

### V. PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF

In addition to the foregoing relief, Microsoft also requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Microsoft's rights in the Minecraft Trademarks, including at least all injunctive relief previously awarded to Microsoft by this Court in the TRO and Preliminary Injunction. Microsoft is also entitled to injunctive relief so it can quickly act against any new e-commerce stores selling Unauthorized Products that are identified and found to be linked to Defaulting Defendants. *See Advance Mag. Publishers Inc.*, No. 22-cv-00854 (N.D. Ill. May 24, 2022).

### CONCLUSION

In view of the foregoing, Microsoft respectfully requests that this Court enter default and default judgment against the Defaulting Defendants, award statutory damages in the amount of fifty thousand dollars ($50,000) per Defaulting Defendant for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c), and enter a permanent injunction order prohibiting Defaulting Defendants from infringing or otherwise violating Microsoft's rights in the Minecraft Trademarks and transferring all assets in Defaulting Defendants' financial accounts necessary to satisfy the statutory damages awarded by the Court to Microsoft.

Dated this 14th day of March 2025.	Respectfully submitted,


<u>/s/ Martin F. Trainor</u>
Martin F. Trainor
Sydney Fenton
Alexander Whang
TME Law, P.C.
10 S. Riverside Plaza
Suite 875
Chicago, Illinois 60606
708.475.1127
martin@tme-law.com
sydney@tme-law.com
alexander@tme-law.com

*Counsel for Plaintiff Microsoft Corporation*

**CERTIFICATE OF SERICE**

I hereby certify that on the 14th day of March 2025, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system and I will electronically publish the documents on a website and send an email to the email addresses identified in Exhibit A to Plaintiff's Motion for Entry of Default and Default Judgment that includes a link to said website.

/s/ Martin F. Trainor
Martin F. Trainor
Sydney Fenton
Alexander Whang
TME Law, P.C.
10 S. Riverside Plaza
Suite 875
Chicago, Illinois 60606
708.475.1127
martin@tme-law.com
sydney@tme-law.com
alexander@tme-law.com

*Counsel for Plaintiff Microsoft Corporation*